<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| KARL HAGBERG, for himself and as parent of E.H., A.H., and C.H., and ZIA SHAIKH, for himself and as parent of M.S., S.S., and H.S., | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : : | Civil Action No. 3:16-cv-1189-BRM-LHG |
| STATE OF NEW JERSEY, CHRIS CHRISTIE, in his official capacity, CHRISTOPHER PORRINO, in his official capacity, MICHELLE M. SMITH, in her official capacity, STUART RABNER, in his official capacity, and JOHN DOES 1-10, | : : : : : : : : | **OPINION** |
| Defendants. | : : | |

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants the State of New Jersey, Governor Chris Christie, Attorney General Christopher Porrino, Clerk of Superior Court Michelle M. Smith, and New Jersey Supreme Court Chief Justice Stuart Rabner's (collectively, "Defendants") Motion to Dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (ECF No. 19.) Plaintiffs Karl Hagberg ("Hagberg") and Zia Shaikh (individually, "Shaikh"; collectively with Hagberg, "Plaintiffs") oppose the motion. (ECF No. 20.) Pursuant to Federal Rule of Civil

---

[1] While Defendants move to dismiss all of Plaintiffs' claims pursuant to Rule 12(b)(6), Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) applies only to Plaintiffs' claim for a violation of their Fourteenth Amendment right to equal protection (Count III).

Procedure 78(a), the Court heard oral argument on July 18, 2017. For the reasons set forth herein, Defendants' Motion to Dismiss (ECF No. 19) is **GRANTED** and Plaintiffs' Amended Complaint (ECF No. 15) is **DISMISSED**.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true, considers any document "*integral to or explicitly relied upon* in the complaint," and draws all inferences in the light most favorable to Plaintiffs. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). A court may also consider and take judicial notice of matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). Court documents are among such matters of public record. *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009).

In this action brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, Hagberg and Shaikh each assert separate but identical claims against Defendants related to their respective child custody disputes. Each alleges his Fourteenth Amendment right to due process was violated because his parenting time with his minor children was limited without "a full and prompt hearing." (ECF No. 15 ¶¶ 2, 8.) Plaintiffs allege "Defendants have established policies, procedures, and precedents denying parents a full and prompt hearing when stripping one parent of physical and legal custody and giving full physical and legal custody to another parent." (*Id.* ¶ 8.) Plaintiffs seek dramatic changes to the ways New Jersey courts and statutes govern custody proceedings between parents. Plaintiffs ask this Court to: (1) enjoin New Jersey courts from reducing a parent's legal custody of children without a plenary hearing within ten days (Count I); (2) declare the "best interests of the child standard" used to decide custody disputes as unconstitutional as applied to Plaintiffs in their respective cases (Count II); (3) declare New Jersey

courts have discriminated against Plaintiffs based on their gender and against indigent parents involved in custody disputes (Count III); and (4) declare Plaintiffs have fundamental rights to custody of their children that cannot be taken away without due process (Count IV).

Plaintiffs initially filed this action against Judge Marlene Lynch Ford, a New Jersey Superior Court Judge in Ocean County who presided over Plaintiffs' respective custody proceedings. (*See* ECF No. 1.) The Court ordered Plaintiffs to amend the Complaint following the Court's dismissal of the claims against Judge Ford, as well as virtually identical cases brought against other Superior Court judges in which Hagberg and Shaikh were plaintiffs.[2] (ECF No. 14.) Plaintiffs then filed the Amended Complaint against Defendants. (ECF No. 15.) Defendants later filed the Motion to Dismiss. (ECF No. 19.)

### A. Hagberg's Factual Allegations

Hagberg alleges the Superior Court issued several orders limiting Hagberg's parenting time with his three children, and these orders were often issued without a plenary hearing. (ECF No. 15 ¶¶ 9-37.) Though Hagberg's children's mother, Anna Hagberg, alleged he hit one of the children, no evidence was presented to the court supporting this allegation. (*Id.* ¶ 11.) Hagberg also alleges Superior Court Judge Lawrence Jones, in response to Anna Hagberg's allegation, ordered on August 14, 2014, that Hagberg's parenting time be limited to eleven hours on Wednesdays and

---

[2] The Honorable Freda L. Wolfson, in a single opinion, granted motions to dismiss in *Allen v. DeBello*, Civil Action No. 14-0760 and *Allen v. Chell*, Civil Action No. 15-3519, in which Hagberg and Shaikh, as well as several other plaintiffs, asserted claims against New Jersey Superior Court judges that were nearly identical to Plaintiffs' claims in this case. Judge Wolfson held the defendant judges were not the proper defendants for declaratory relief under 42 U.S.C. § 1983 because they had acted as neutral arbiters in the custody proceedings. *Allen v. DeBello*, No. 14-0760, 2016 WL 1670927, at *14 (D.N.J. Apr. 27, 2016), *aff'd sub nom.*, 861 F.3d 433 (3d Cir. 2017). Judge Wolfson took notice of Plaintiffs' Complaint in this case and stated that "Hagberg and Shaikh have not yet responded to [Judge Ford's] motion to dismiss filed in [this case] . . . Plaintiffs would be well-advised to tailor their opposition" to her rulings in *Allen v. DeBello* and *Allen v. Chell*. *Id.* at *3 n.5.

twelve hours on Sundays, including no overnight parenting time. (*Id.* ¶ 12.) Hagberg repeatedly demanded equal parenting time, and while Judge Jones increased Hagberg's parenting time, he has not granted him equal time. (*Id.* ¶ 14.) On January 6, 2015, Judge Ford terminated all parenting time between Hagberg and his daughter, E.H., until further notice. (*Id.* ¶ 16.) On August 5, 2015, Judge Ford, without holding a plenary hearing or "finding . . . abuse or neglect," suspended Hagberg's time with all of his children in an *ex parte* proceeding until further order of the court. (*Id.* ¶¶ 19-20.) On October 16, 2015, Judge Ford permitted Hagberg to see his son, C.H., for a few hours per week, but far less than the fifty percent custody Hagberg sought. (*Id.* ¶ 23.) On February 5, 2016, Judge Ford, without a plenary hearing or making any findings of abuse or neglect, terminated all of Hagberg's parenting time with C.H. until further notice. (*Id.* ¶¶ 29-30.) Judge Ford reasoned Hagberg spending time with his son and not his daughters, with whom Hagberg's relationship was strained, caused emotional distress to his daughters. (*Id.* ¶ 31.)

In late 2015, Hagberg filed an interlocutory appeal with the New Jersey Superior Court, Appellate Division ("Appellate Division") to challenge Judge Ford's interim custody order, but he could not afford the filing fee. (*Id.* ¶ 25.) He consulted with a *pro bono* attorney, who advised him an interlocutory appeal was unlikely to be granted and therefore a waste of money. (*Id.* ¶ 26.) Plaintiffs allege upon information and belief "the [A]ppellate [D]ivision almost never grants interlocutory appeals from family court," and as a result "an interlocutory appeal is not an adequate remedy to address the deprivations of rights suffered by . . . Plaintiffs." (*Id.* ¶¶ 27-28.)

### B. Shaikh's Factual Allegations

In October 2013, Shaikh filed for divorce from his wife Laura Germandig-Shaikh ("Germandig"), with whom he is the parent of three minor children. (*Id.* ¶ 38-39.) On January 18, 2014, Germandig filed for a Temporary Restraining Order ("TRO") against Shaikh, which was

dismissed after a hearing on January 31, 2014. (*Id.* ¶ 40.) Despite the court's finding that nothing in Germandig's testimony alleged domestic violence, Shaikh was ordered to vacate his house. (*Id.*) On April 2, 2014, Germandig filed a motion demanding full custody of the children. (*Id.* ¶ 41.) The motion had a return date of May 2, 2014. (*Id.*) On April 23, 2014, Germandig's attorney appeared before Superior Court Judge Madelin Einbinder for a case management conference. (*Id.* ¶ 42.) Shaikh had not been notified of the conference, and his counsel did not attend. (*Id.*) The court attempted to reach Shaikh's attorney but was unsuccessful. (*Id.* ¶ 43.) At the conference, Germandig's attorney made an oral request for an award of exclusive custody to Germandig. (*Id.* ¶ 44.) Germandig submitted an affidavit in which she accused Shaikh of verbal harassment and claimed he had kicked their daughter some time in February. (*Id.*) The court granted Germandig "sole, legal and residential custody of the children," and barred Shaikh from the family's residence. (*Id.* ¶ 47.) The court further stated, "there is a concern that . . . Mr. Shaikh may try to take the children," though there was no factual basis provided for this concern. (*Id.* ¶ 49.)

On June 13, 2014, the court heard oral argument on Germandig's motion. (*Id.* ¶ 50.) Shaikh appeared *pro se* and contradicted Germandig's allegations of abuse as well as the claim he, as a Pakistani national, was planning to flee the country. (*Id.*) Shaikh testified he is a United States citizen who had resided in this country for twenty-six years. (*Id.*) Nevertheless, as a result of the June 13, 2014 proceeding, Judge Einbinder ordered, *inter alia*: (1) Germandig would continue to have full legal and physical custody; (2) Shaikh's parenting time with his daughter, M.S., was suspended indefinitely; (3) Shaikh would be allowed two short visits each week with his other two children, but no overnights; (4) Shaikh and Germandig would mediate the issue of custody; (5) Shaikh could request a plenary hearing if no custody agreement was reached; (6) Shaikh must

attend anger management; and (7) Shaikh must turn over a variety of documents including his passport. (*Id.* ¶¶ 51-53.)

On August 29, 2014, Judge Einbinder ordered Shaikh's parenting time with his children suspended until further notice. (*Id.* ¶ 54.) Plaintiffs allege they do not know the reason for this order but surmise, "the suspension of parenting time appears to have been based on unsubstantiated allegations that Shaikh was going to flee the country." (*Id.* ¶ 55.) Shaikh has rarely seen his children since the August 29, 2014 order despite his repeated demands that his parental rights be restored. (*Id.* ¶¶ 57-58.) Plaintiffs claim the restrictions on Shaikh's parenting time were imposed with no plenary hearing or finding of abuse or neglect. (*Id.* ¶ 61.) In 2016, Shaikh filed a motion for leave to file an interlocutory appeal with the Appellate Division, which was denied. (*Id.* ¶ 63.)

### C. Plaintiffs' General Factual Allegations

Plaintiffs allege the "denial of prompt and full custody hearing[s] in the context of transferring custody from one parent to another is widespread throughout the state and country." (*Id.* ¶ 67 (citing Donald C. Hubin, *Parental Rights and Due Process*, 1 J. L. & Fam. Stud. 123 (1999) (noting the widespread violation of due process in the family law context); *B.S. v. Somerset Cty.*, 704 F.3d 250, 275 (3d Cir. 2013)).) Plaintiffs allege, while New Jersey may have taken corrective measures to prevent deprivations of rights when the state is removing children from both parents, there are no such safeguards when one parent's rights are affected. (*Id.* ¶ 74.) Plaintiffs claim the policies in place in New Jersey custody proceedings place all parents of minor children "at risk of losing custody at any time without due process." (*Id.* ¶ 75.)

## II. LEGAL STANDARDS

### A. Motion to Dismiss

Defendants move to dismiss the Amended Complaint pursuant to Rule 12(b)(6). Defendants also move to dismiss Count III pursuant to Rule 12(b)(1), on the ground Plaintiffs lack standing to assert an equal protection claim on behalf of indigent parents because they have never alleged they are indigent. (ECF No. 19.) "Caution is necessary because the standards governing the two rules differ markedly, as Rule 12(b)(6) provides greater procedural safeguards for plaintiffs than does Rule 12(b)(1)." *Davis v. Wells Fargo*, 824 F.3d 333, 348-49 (3d Cir. 2016).

#### i.     Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### ii.  Federal Rule of Civil Procedure 12(b)(1)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis*, 824 F.3d at 346. A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id*. (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id*. (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id*. (citation omitted). Thus, when a factual challenge is made, "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id*. (citing *Mortensen v. First Fed. Sav. &*

*Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Here, Defendants assert a facial attack, arguing Plaintiffs lack standing to assert an equal protection claim on behalf of indigent parents because they do not allege in the Amended Complaint that they are indigent. *Hassan v. City of New York*, 804 F.3d 277, 288-89 (finding a Rule 12(b)(1) challenge to a plaintiff's standing to assert an equal protection claim is a facial attack). The Court, therefore, accepts the allegations in the Amended Complaint as true.

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (citing *Mortensen*, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id.*

## III. DECISION

### A. Fourteenth Amendment Due Process Claim (Count II)

"Section 1983 provides remedies for deprivations of rights established by the Constitution, including substantive due process under the Fourteenth Amendment." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (citing *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)). "To maintain a substantive due process claim [under the Fourteenth Amendment], [a plaintiff] must have been deprived of a particular interest that 'is protected by the substantive due process clause.'" *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (quoting *Chainey*, 523 F.3d at 219); *see Clayworth v. Luzerne Cty., Pa.*, 513 F. App'x 134, 136 (3d Cir. 2013). Further, a plaintiff "must also show that 'the government's deprivation of that protected interest shocks the conscience.'" *Steele*, 855 F.3d at 502 (quoting *Chainey*, 523 F.3d at 219)). "[O]nly the most egregious official conduct" constitutes action that "shocks the conscience." *Chainey*, 523 F.3d at 219.

With respect to child custody cases, courts have held a parent "has a constitutionally protected liberty interest in the custody, care, and management of his child." *Clayworth*, 513 F. App'x at 137 (citing *Croft v. Westmoreland Cty. CYS*, 103 F.3d 1123, 1125 (3d Cir. 1997)). A parent's liberty interest in the custody of his or her children is not absolute and is "limited by the compelling government interest in the protection of children." *Id.* Courts look to the best interests of the child to determine the reasonableness of defendants' conduct in child custody cases. *Id.*

"In custody cases, it is well settled that the court's primary consideration is the best interests of the children." *Hand v. Hand*, 917 A.2d 269, 270 (N.J. Super. Ct. App. Div. 2007) (citing *Kinsella v. Kinsella*, 696 A.2d 556 (N.J. 1997)). "Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c)." *Id.* at 271. The United States

Supreme Court has stated the "best interests of the child" standard is "a proper and feasible criterion for making the decision as to which of the two parents will be accorded custody." *Reno v. Flores*, 507 U.S. 292, 303-04 (1993). "When [a custody] dispute is between two fit parents, the best interest of the child standard controls because both parents are presumed to be equally entitled to custody." *Watkins v. Nelson*, 748 A.2d 558, 568 (N.J. 2000). The best interest standard applies when the custody dispute is between two parents, because "both parents have a fundamental right to the care and nurturing of their children and neither has a preeminent right over the other." *Sacharow v. Sacharow*, 826 A.2d 710, 721 (N.J. 2003). Parents involved in a custody dispute "submit[] their dispute to the court" and the state then assumes "the role of mediator by necessity." *Id.* (citations omitted).

Courts distinguish custody disputes between parents from those in which "the State or a third party seeks to interfere with [a parental] right." *See id.* (citing *Watkins*, 748 A.2d at 558). In those instances, "only the avoidance of harm to the child or 'exceptional circumstances' will justify an intrusion." *Id.* When a third party seeks custody, the presumption in favor of a parent can never be rebutted "by a simple application of the best interests test." *Watkins*, 748 A.2d at 559.

Plaintiffs argue courts should require clear and convincing evidence even in disputes between two parents, if the court is awarding one of the parents less than equal custody. (ECF No. 15 ¶¶ 359-66.) Plaintiffs argue the Third Circuit "explicitly rejected the reasoning of [the New Jersey Supreme Court in] *Sacharow*" by finding "[f]rom the parent's perspective, there may be little meaningful difference between instances in which the state removes a child and takes her into state custody and those in which the state shifts custody from one parent to another." (ECF No. 20 at 18-19 (citing *B.S.*, 704 F.3d at 272).) However, Plaintiffs' reliance is misplaced. First, the Third Circuit never mentioned, much less rejected, *Sacharow*. *See B.S.*, 704 F.3d 250. Second, *B.S.* arose

from the decision of county child welfare officials to remove a child from the custody of an allegedly abusive mother and place the child with her biological father. *Id.* at 253. The Third Circuit ruled the county had violated the mother's rights to due process when it failed to provide her a prompt opportunity to be heard after her daughter was removed from her home. *Id.* at 272-73. Plaintiffs argue *B.S.* stands for the proposition that all parents are entitled to such a hearing. (ECF No. 20 at 19-20.) But the *B.S.* court found a hearing was required when "*[t]he state has caused a deprivation* and risks having done so wrongly." 704 F.3d at 272 (emphasis added). This is different from situations where, as in Plaintiffs' custody disputes, both parents who seek custody "submit[] their dispute to the court" and the state assumes "the role of mediator by necessity." *Sacharow*, 826 A.2d at 721.

Plaintiffs also argue the United States Supreme Court has held the termination of parental rights requires clear and convincing evidence, not merely the best interests standard.[3] (*See* ECF No. 20 at 6-8 (citing *Troxel v. Granville*, 530 U.S. 57 (2000); *Santosky v. Kramer*, 455 U.S. 745 (1982).) Plaintiffs posit the Court in *Santosky* held a parent's rights could not be terminated based on a "fair preponderance of the evidence" standard, and that courts must apply the "clear and convincing" standard. 455 U.S. at 768-69. The *Troxel* Court overturned a state court's application of the best interests standard in a dispute between a parent and grandparents seeking visitation. 530 U.S. at 60-61.

---

[3] At oral argument, there was substantial colloquy regarding New Jersey court hearings brought pursuant to Title 9, N.J.S.A. §§ 9:6-8.21, *et seq.*, which concern abuse or neglect, and hearings brought pursuant to Title 30, N.J.S.A. §§ 30:4C-12, *et seq.*, which is a guardianship proceeding. The Court and the parties noted Title 9 and Title 30 hearings can lead to a termination of parental rights. For that reason, the state provides services, such as counseling or drug treatment, in an effort to prevent the severe step of a termination of parental rights. A custody hearing between two parents is not state action and does not demand the procedures that are in place in Title 9 and Title 30 hearings.

Neither *Santosky* nor *Troxel*, however, involved a custody dispute between parents. Courts apply the heightened clear and convincing standard in disputes between a parent and a third party, because such cases present the risk of "a unique kind of deprivation" that is "final and irrevocable." *Stantosky*, 455 U.S. at 759. In contrast to permanent terminations of parental rights, custody orders can be modified on a showing of "changed circumstances." *Hand*, 917 A.2d at 271; *see also Kirernan v. Kirernan*, 809 A.2d 199, 202 (N.J. Super. Ct. App. Div. 2002). While Plaintiffs have not been awarded the share of custody they seek, their claims demonstrate they have had some parenting time restored at different points in their custody disputes. (ECF No. 15 ¶¶ 15, 51, 60.) The Court does not doubt Plaintiffs' sincerity regarding the pain they have experienced as a result of the limitations on their parenting time. These limitations, however, are not a "final and irrevocable" deprivation of rights that would require courts to apply a clear and convincing evidence standard. *See Stantosky*, 455 U.S. at 759.

Plaintiffs have not cited any controlling precedent to support their argument that courts should apply the same standard of review in custody disputes between parents that is applied when a third party seeks to interfere with a parent's rights. Plaintiffs' argument runs counter to United States Supreme Court and New Jersey Supreme Court precedent.[4]

For the foregoing reasons, Plaintiffs claim for a violation of their due process rights under the Fourteenth Amendment (Count II) is **DISMISSED**.

---

[4] A recent New Jersey Supreme Court decision demonstrates the centrality of the best interests standard in custody disputes. *Bisbing v. Bisbing*, No. 077533, 2017 WL 3392717, at *14 (N.J. Aug. 8, 2017). The Court reversed its own precedent and found the best interests standard was appropriate to resolve a non-custodial parent's challenge to a custodial parent's relocation of his or her residence. *Id.*; *see also Emma v. Evans*, 71 A.3d 862 (N.J. 2013) (finding the best interests standard is appropriate for settling parents' dispute over renaming a child).

**B. Equal Protection Claim (Count III)**

Under the Equal Protection Clause of the Fourteenth Amendment, all similarly situated individuals must be treated alike. *See Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a claim under the Equal Protection Clause, a plaintiff must allege: (1) he or she is a member of a protected class; (2) he or she was treated differently from similarly situated individuals; and (3) the disparate treatment was based on membership in the protected class. *Kasper v. Cty. of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013) (citation omitted). The Equal Protection Clause applies to gender-based classifications. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017); *U.S. v. Virginia*, 518 U.S. 515, 531 (1996). A policy that confers benefits to one gender at the expense of another must be supported by an "exceedingly persuasive justification." *Id.* at 1683 (citing *Virginia*, 518 U.S. at 531).

Notwithstanding the Equal Protection Clause, states have "a wide scope of discretion in enacting laws which affect some groups of citizens differently than others." *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). Therefore, "a statutory classification that neither proceeds along suspect lines [such as race or gender] nor infringes on fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Fed. Commc'ns Commm. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

**1. Gender Discrimination**

Plaintiffs claim New Jersey courts discriminate against fathers in custody proceedings on the basis of gender in violation of their right to equal protection. (ECF No. 15 ¶¶ 369-81.) In support of their argument, Plaintiffs cite a study of two New Jersey counties, using data from 1985 to 1987, which "showed that although joint custody was sought most of the time, the mother was

routinely awarded sole custody." (ECF No. 15 ¶ 372 (citing Diane Shrier, M.D. et al., *Child Custody Arrangements: A Study of Two New Jersey Counties*, J. of Psychiatry and L., Spring 1989).) The study has no bearing on Plaintiffs' claims, though, because "[i]n 1990, the [New Jersey] Legislature substantially amended the laws governing custody, finding that when a marriage dissolves the public policy of [the] State is to assure that minor children are in frequent contact with, and cared for, by the non-custodial, as well as the custodial, parent." *Gubernat v. Deremer*, 657 A.2d 856, 866 (N.J. 1995). "The Legislature clearly has ended gender-based differences in marital and parental rights, whether rooted in law or custom, and instead determined that parental disputes about children should be resolved in accordance with each child's best interests." *Id.*

Plaintiffs argue New Jersey has not rejected gender-based policies despite the actions of the Legislature, because "New Jersey family court judges continue to apply to so-called Tender Years Doctrine which discriminates against [f]athers." (ECF No. 15 ¶ 374.) Plaintiffs support this claim in two ways. First, they cite a trial judge's statement—six months after *Gubernat*—that *In re Baby M.*, 537 A.2d 1227 (1988), stood for the principle "that the 'tender years' doctrine is alive and well in New Jersey." (ECF No. 20 at 35-36 (citing *Mustilli v. Mustilli*, 671 A.2d 650, 651 (N.J. Super. Ch. Div. 1995)).) Second, Plaintiffs cite Superior Court Judge Severiano Lisboa's statement on October 26, 2012, that "there's a presumption [] a child of tender years should only go with the mother." (ECF No. 15 ¶ 374.)

Plaintiffs' argument is flawed for two reasons. First, the tender years doctrine no longer applies in New Jersey. The court in *In re Baby M.* did not affirm the use of the tender years doctrine, but instead held a court could consider the bond that arises between a mother and a child after the mother has had custody for the first several months of the child's life. 537 A.2d at 1256 n.17.

Second, even if the State Court still applied the tender years doctrine as a general matter, it has no relevance to Plaintiffs' claims. Neither Hagberg nor Shaikh alleges the tender years doctrine was invoked in his case. Neither was a party in *Mustilli* or the action in which Judge Lisboa invoked the tender years doctrine. Plaintiffs' allegations of gender discrimination, supported by references to two statements by trial judges made seventeen years apart, do not meet the plausibility standard required to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (holding a plaintiff must offer "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action) (citing *Twombly*, 550 U.S. at 555, 557).

Further, New Jersey's policy for awarding custody does not make a gender-based classification and therefore is subject to rational basis review. *See Gubernat*, 657 A.2d at 866. Courts apply heightened scrutiny to gender-based classifications when those classifications are explicit. *See Morales-Santana*, 137 S. Ct. at 1678 (applying heightened scrutiny to policy that conferred citizenship on children based on five years of continuous residency by fathers but only one year of residency by mothers); *Virginia*, 518 U.S. at 531 (holding that state military college's policy of excluding women was subject to heightened scrutiny). As New Jersey's policy does not "proceed[] along suspect lines . . . [it] must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *See Beach Commc'ns, Inc.*, 508 U.S. at 313. Plaintiffs have not pleaded there is no rational basis for New Jersey's child custody policy, Defendants' Motion to Dismiss Plaintiffs' equal protection claim is **GRANTED**.

### 2. Standing as Indigent Parents

Plaintiffs also allege New Jersey policy violates their right to equal protection, because "indigent parents accused of abuse or neglect of their children have a constitutional right to

counsel," while "New Jersey does not provide the same right to counsel for the indigent in the context of a divorce proceeding or other inter-parent dispute that results in loss of custody by a parent." (ECF No. 15 ¶¶ 375-76.) Defendants move to dismiss the claim pursuant to Rule 12(b)(1), arguing Plaintiffs lack Article III standing to assert this claim because "neither Plaintiff claims that a court has found them to be indigent, that they have requested the appointment of counsel, or that a request for such counsel has been denied." (ECF No. 19-1 at 43.) The Court agrees.

Article III "standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Because Plaintiffs have alleged no facts to support a finding either is indigent, they have not alleged they have suffered an injury in fact related to Defendants' alleged discrimination against indigent parents. Therefore, Plaintiffs lack standing to assert the claim on behalf of indigent parents.

As Plaintiffs have not adequately established New Jersey discriminates against fathers based on their gender, and because they lack standing to assert a claim on behalf of indigent parents, Plaintiffs' claim for a violation of their right to equal protection under the Fourteenth Amendment (Count III) is **DISMISSED**.

### C. Right to a Plenary Hearing (Count I)

"New Jersey courts' policy on plenary hearings in custody disputes . . . has not been codified by statute but instead developed in the state case law." *Allen*, 861 F.3d at 437. "[A] plenary hearing is not required in every contested motion in New Jersey state court; a trial judge has discretion to decide such a motion without a hearing." *Id.* (citing *Shaw v. Shaw*, 351 A.2d 374, 376 (N.J. Super. Ct. App. Div. 1976)). A plenary hearing is required only when "the affidavits show there is a genuine issue as to a material fact, and [when] the trial judge determines that a plenary hearing would be helpful in deciding such factual issues." *Id.* (quoting *Shaw*, 351 A.2d at 376). The New Jersey Supreme Court has long recognized the trial court in family matters is entitled to great deference because "it has a 'feel of the case' that can never be realized by a review of the cold record." *N.J. Div. of Youth & Family Servs. v. E.P.*, 952 A.2d 436, 445 (N.J. 2008) (citing *N.J. Div. of Youth & Family Servs. v. M.M.*, 914 A.2d 1265 (N.J. 2007)); *see also N.J. Div. of Youth & Family Servs. v. M.C. III*, 990 A.2d 1097 (N.J. 2010). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." *Cesare v. Cesare*, 713 A.2d 390, 399 (N.J. 1998).

Plaintiffs allege they suffered a violation of their due process rights under the Fourteenth Amendment because the New Jersey court modified their custody arrangements without a plenary hearing. (ECF No. 15 ¶¶ 343-52.) Plaintiffs make the same argument in support of this claim as in support of their claim that the best interests standard is unconstitutional, i.e., the Third Circuit has abrogated the distinction between parent versus parent custody disputes and parent versus third party custody disputes. (ECF No. 20 at 29-30 (citing *B.S.*, 704 F.3d at 272-75).) However, as discussed above, *B.S.* does not represent the change to custodial law that Plaintiffs claim it represents.

Further, Plaintiffs did not specify, either in their brief or at oral argument, whether their challenge to New Jersey courts' policy on plenary hearings is an "as applied" challenge or a "facial" challenge. A facial challenge "tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). Facial challenges are "disfavored" outside of First Amendment claims. *United States v. Mitchell*, 652 F.3d 387, 406 (3d Cir. 2011) (*en banc*). A facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [challenged policy] would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987).

Here, to mount a successful facial challenge Plaintiffs would have to show a plenary hearing would be required in every custody dispute in New Jersey courts. This is not the case. *See Pfeiffer v. Ilson*, 722 A.2d 966, 967 (N.J. Super. Ct. App. Div. 1999) (finding "a plenary hearing is not necessary in every case"). "It is only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful in deciding such factual issues, that a plenary hearing is required." *Shaw*, 351 A.2d at 376. "[W]here the need for a plenary hearing is not so obvious, the threshold issue is whether the movant has made a prima facie showing that a plenary hearing is necessary." *Hand*, 917 A.2d at 271. "No reported case [in New Jersey] holds that a plenary hearing is inexorably required to resolve contested applications" concerning the welfare of a child. *Barblock v. Barblock*, 890 A.2d 1005, 1010 (N.J. Super. Ct. App. Div. 2006). Plaintiffs' facial challenge therefore fails.

To the extent Plaintiffs seek to challenge New Jersey courts' policy on plenary hearings as applied to their respective cases, that claim also fails. Plaintiffs seek declaratory relief that would "provide that a plenary hearing [be held] within ten days to any parent who has their right to the

care[,] custody[,] and control of their children reduced through State action." (ECF No. 15 ¶ 355.) Such relief would run afoul of the United States Supreme Court's precedent in *O'Shea v. Littleton*, 414 U.S. 488, 501 (1974). In *O'Shea*, the plaintiffs were nineteen civil rights activists who sought to enjoin local law enforcement officials and two judges from discriminating against them based on their race. 414 U.S. at 490-91. The plaintiffs alleged the defendants imposed harsh and arbitrary punishments on plaintiffs in an effort to discourage their activism. *Id.* at 492.

The *O'Shea* Court denied injunctive relief, though, finding such an injunction would be "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state . . . trials." *Id.* at 499-500. To enforce the injunction, a federal court would have to undertake "nothing less than an ongoing federal audit of state . . . proceedings" and "sit in constant day-to-day supervision of these [state] judicial officers." *Id.* at 500-01. Finally, the Court determined such federal court oversight of a state court "is antipathetic to established principles of comity." *Id.* at 501.

Defendants argue *O'Shea* compels this Court to dismiss Plaintiffs' claim that the lack of a plenary hearing violates their right to due process. The Court agrees. As in *O'Shea*, the relief Plaintiffs seek would require the Court to engage in "an ongoing federal audit of state . . . proceedings." *See id.* at 500.

For the foregoing reasons, Plaintiffs' claim that the lack of a plenary hearing violates their right to due process under the Fourteenth Amendment (Count I) is **DISMISSED**.

### D. Claim Pursuant to the Declaratory Judgment Act (Count IV)

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs seek a "declaratory judgment that fundamental rights, including parental rights, may not be taken away without due process merely because they are in family court, and the Court claims to act in the 'best interests'

of children." (ECF No. 15 ¶ 385.) As the Court has dismissed each of Plaintiffs' other claims, it declines jurisdiction over the remaining claim for declaratory judgment. *See Weaver v. Wilcox*, 650 F.2d 22, 25 (3d Cir. 1981) ("[T]he [Declaratory Judgment] Act empowers a federal court to grant the remedy only when there is already an actual controversy, based on independent jurisdictional grounds, before the court.").

Therefore, Plaintiffs' claim for a declaratory judgment (Count IV) is **DISMISSED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 19) is **GRANTED** and Plaintiffs' claims are **DISMISSED**. An appropriate Order will follow.


Date: **September 26, 2017**                              */s/ Brian R. Martinotti*
                                                          **HON. BRIAN R. MARTINOTTI**
                                                          **UNITED STATES DISTRICT JUDGE**